**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

**Bridal Expressions LLC,**

          **Plaintiff,**

**v.**

**Owners Insurance Company,**

          **Defendant.**

**Case No. 1:20-cv-00833-SO**

**Hon. Solomon Oliver, Jr.**

**DEFENDANT OWNERS INSURANCE COMPANY'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT OR, ALTERNATIVELY, TO STRIKE NATIONWIDE CLASS ACTION ALLEGATIONS**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... iii

BRIEF STATEMENT OF THE ISSUES TO BE DECIDED ...................................................... vi

INTRODUCTION ........................................................................................................................1

BACKGROUND ..........................................................................................................................1

I.      Plaintiff Seeks Coverage Under an Insurance Policy Based on the Existence of the COVID-19 Pandemic................................................................................................................................1

II.     The Insurance Policy..........................................................................................................3

        A.      The Policy's Coverage Provision..........................................................................3

        B.      The Policy's Exclusions.........................................................................................4

ARGUMENT................................................................................................................................5

I.      The Amended Complaint Fails to State a Claim Under Rule 12(b)(6)................................5

        A.      Under Ohio Law, Plaintiff Is Not Entitled to Coverage Under the Policy .............6

                1.      There is No Direct Physical Loss to Covered Property And Thus No Business Income or Extra Expense Coverage ...........................................7

                2.      Plaintiff Has Not Adequately Alleged a "Suspension" of Business..........10

                3.      Because Plaintiff Is Not Entitled to Business Income or Extra Expense Coverage, It Is Likewise Not Entitled to "Sue & Labor" Coverage.........10

                4.      The Lack of a Virus Exclusion Has No Bearing On Whether Plaintiff is Entitled to Coverage .................................................................................11

        B.      Allowing Plaintiff to Amend Its Complaint Would be Futile Because the Policy's Exclusions Would Bar Coverage Anyway ...........................................................13

II.     Even If Plaintiff's Claim Survives on an Individual Basis, the Nationwide Class Allegations Should be Stricken..........................................................................................13

        A.      Legal Framework .................................................................................................14

                1.      Rule 23's Class Certification Standards ...................................................14

2.      Rule 12(f)'s Motion to Strike Standards.....................................................14

B.      Plaintiff's Class Definition Would Require This Court to Engage in a Claim-by-Claim Review, Examining the Terms of Each Policy, the Differing Interpretations of The Differing Terms Under Each State's Law, the Effect of the Various Governmental Orders Under Each State's Law That May Apply, and the Damages Alleged by Each Policyholder .............................................................................15

1.      The Policies' Varying Terms Present Individualized Issues .....................16

2.      Varying State Law Interpretations of Threshold Coverage Issues, Such as What Qualifies as a "Direct Physical Loss," Present Individualized Issues........................................................................................................17

3.      Varying State Law Interpretations of Each of the Policies' Many Exclusions Will Present a Multitude of Individualized Issues.....................................18

4.      Varying Fact Issues Necessary to Invoke Coverage Will Require a Claim-by-Claim Review ....................................................................................19

C.      These Individualized Issues Preclude Class Certification .....................................19

CONCLUSION.............................................................................................................................20

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)..............................................21

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

# TABLE OF AUTHORITIES

**Cases**

*Am. Home Assur. Co. v. J.F. Shea Co.*,
445 F. Supp. 3657 (D.D.C. 1978) .......................................................................................... 11

*Am. W. Door & Trim v. Arch Speciality Ins. Co.*,
2015 U.S. Dist. LEXIS 34589 (C.D. Cal. Mar. 18, 2015) ...................................................... 20

*American States Ins. Co. v. Koloms*,
687 N.E.2d 72 (Ill.1997) ........................................................................................................ 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................................................................................................................. 5

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
528 F.3d 426 (6th Cir. 2008) ............................................................................................. 6, 12

*Berrylane Trading, Inc. v. CNA Fin. Corp.*,
No. 1:17-cv-2360, 2018 U.S. Dist. LEXIS 3803 (N.D. Ohio Jan, 8, 2018) .............................. 7

*Bituminous Cas. Corp. v. Sand Livestock Sys.*,
728 N.W.2d 216 (Iowa 2007) ................................................................................................ 19

*Chicago Title Ins. Co. v. Huntington Nat'l Bank*,
719 N.E.2d 955 (Ohio 1999) .................................................................................................... 6

*Cincinnati Specialty Underwriters Ins. Co. v. Larschied*,
2014-Ohio-4137 (Ohio Ct. App. 2014) .......................................................................... 6, 11, 12

*Florists Mut. Ins. Co. v. Ludy Greenhouse Manufacturing Corp.*,
521 F. Supp. 2d 661 (S.D. Ohio 2007) ................................................................................... 18

*Gavrilides Management Company et al. vs. Mich. Ins. Co.*,
Case No. 20-258-CB-C30 (Ingham County July 21, 2020) .................................................... 8

*Gawry v. Countrywide Home Loans, Inc.*,
640 F. Supp. 2d 942 (N.D. Ohio 2009) ................................................................................. 16

*Glazer v. Reimer Law Co.*,
2019 U.S. Dist. LEXIS 25151 (N.D. Ohio Feb. 15, 2019) ...................................................... 15

*Gooch v. Life Invs. Ins. Co. of Am.*,
672 F.3d 402 (6th Cir. 2012) ................................................................................................. 14

*Hastings Mut. Ins. Co. v. Mengel Dairy Farms, Inc.*,
No. 5:19-cv-1728, 2020 U.S. Dist. LEXIS 9007 (N.D. Ohio May 19, 2020) ......................... 10

*Jim White Agency Co. v. Nissan Motor Corp.*,
126 F.3d 832 (6th Cir. 1997) ................................................................................................... 6

*Journey Acquisition-II, L.P. v. EQT Prod. Co.*,
830 F.3d 444 (6th Cir. 2016) ................................................................................................... 7

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

*Kennedy v. Cleveland*,
  797 F.2d 297 (6th Cir. 1986) ............................................................................................... 14

*Lawson v. Life of the S. Ins. Co.*,
  286 F.R.D. 689 (M.D. Ga. 2012) .......................................................................................... 20

*Loreto v. The Procter & Gamble Co.*,
  2013 U.S. Dist. LEXIS 162752 (S.D. Ohio Nov. 15, 2013) ................................................... 15

*Mastellone v. Lightning Rod Mut. Ins. Co.*,
  884 N.E.2d 1130 (Ohio Ct. App. 2008) ............................................................................. 7, 8

*Mellin v. Northern Security Ins. Co.*,
  167 N.H. 554 (2015) ............................................................................................................ 18

*O'Shea v. Littleton*,
  414 U.S. 488 (1974) ............................................................................................................. 13

*Ohayon v. Safeco Ins. Co.*,
  747 N.E.2d 206 (Ohio 2001) .................................................................................................. 6

*Oom v. The Michaels Cos.*,
  2017 U.S. Dist. LEXIS 112113 (W.D. Mich. July 19, 2017) ................................................. 15

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) .................................................................................. 14, 15, 19

*Port of Seattle v. Lexington Ins. Co.*,
  48 P.3d 334 (Wash. Ct. App. 2002) ...................................................................................... 11

*Progressive Health & Rehab Corp v. Quinn Med., Inc.*,
  323 F.R.D. 242 (S.D. Ohio 2017) ......................................................................................... 15

*RK Mech., Inc. v. Travelers Prop. Cas. Co. of Am.*,
  944 F. Supp. 2d 1013 (D. Colo. 2011) ................................................................................. 11

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*,
  863 F.3d 460 (6th Cir. 2017) ............................................................................................... 14

*Seringetti Constr. Co. v. Cincinnati*,
  553 N.E.2d 1371 (Ohio Ct. App. 1988) ................................................................................. 7

*State Farm Ins. Co. v. Peda*,
  2005-Ohio-3405 (Ohio Ct. App. 2005) ................................................................................ 13

*Thomas v. Equifax Info. Servs., LLC*,
  No. 3:19-cv-286, 2020 U.S. Dist. LEXIS 73344 (S.D. Ohio Apr. 27, 2020) ............................ 6

*Uniroyal, Inc. v. Home Ins. Co.*,
  707 F. Supp. 1368 (E.D.N.Y. 1988) ...................................................................................... 18

*Universal Image Prods, Inc. v. Chubb* Corp.,
  703 F. Supp. 2d 705 (E.D. Mich. 2010) ............................................................................... 18

*Universal Image Products v. Federal Ins. Co.*,
  475 F. App'x 569 (6th Cir. 2012) ............................................................................................ 9

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

*Wal-Mart v. Dukes*,
564 U.S. 338 (2011).....................................................................................................14, 17, 20

*Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co.*,
114 Cal. App. 4th 548 (2003)............................................................................................ 12

*Watson v. Travelers Indem. Co.*,
2005 Mich. App. LEXIS 917 (Mich. Ct. App. April 12, 2005)................................................. 18

*Wilkie v. Auto-Owners Ins. Co.*,
664 N.W.2d 776 (Mich. 2003)........................................................................................... 19

*World, L.L.C. v. Atlas Choice Corp.*,
2015 U.S. Dist. LEXIS 65215 (N.D. Ohio May 18, 2015).......................................................... 15

*Young v. Nationwide Mut. Ins. Co.*,
693 F.3d 532 (2012)......................................................................................................... 14

**Statutes**

15 U.S.C. § 1012(b) ........................................................................................................... 18

**Rules**

Local Rule 23.1(c) ............................................................................................................. 14

Fed. R. Civ. P. 12(b)(6)........................................................................................................ 5

Fed. R. Civ. P. 12(f)....................................................................................................... 5, 14

Fed. R. Civ. P. 23.......................................................................................................14, 15, 20

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

## BRIEF STATEMENT OF THE ISSUES TO BE DECIDED

I.  Plaintiff's Amended Complaint seeks Business Income and Extra Expense coverage under an insurance policy that requires the insured to have suffered "direct physical loss of or damage to" Covered Property.  The first issue to be decided is whether the Complaint's conclusory statement that "COVID-19 caused direct physical loss and damage to Plaintiff's . . . Covered Properties," without any additional factual detail, is sufficient to state a claim upon which relief can be granted.

**Owners Answers:** No.  To obtain coverage under a policy requiring "direct physical loss" under Ohio law, the damage must physically affect the structural integrity of covered property, and it must permanently affect the structural integrity of covered property.  *See Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130 (Ohio Ct. App. 2008).  Plaintiff has not alleged any facts supporting such damage, and Plaintiff's legal conclusions need not be accepted as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

II.  To obtain Business Income and Extra Expense Coverage under the Policy—as Plaintiff seeks to do—Plaintiff's losses must also have resulted from a "necessary suspension" of operations.  The second issue to be decided is whether the Complaint's conclusory statement that COVID-19 "caus[ed] a necessary suspension of operations," without any additional factual detail, is sufficient to state a claim upon which relief can be granted.

**Owners Answers:** No.  "Courts interpreting the term 'necessary suspension' in an insurance policy have overwhelmingly held that the term requires a complete cessation, even if temporary, as opposed to a mere slowing down of business before coverage is triggered."  *Hastings Mut. Ins. Co. v. Mengel Dairy Farms, Inc.*, No. 5:19-cv-1728, 2020 U.S. Dist. LEXIS 9007, at *15-16, 18 (N.D. Ohio May 19, 2020) (Pearson, J.).  Plaintiff has not alleged any facts supporting such damage, and Plaintiff's legal conclusions need not be accepted as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

III.  The third issue to be decided is whether Plaintiff has stated a claim for "Sue & Labor" Coverage because the Policy provides that insureds must "[t]ake all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss," and to "keep a record of expenses for emergency and temporary repairs."

**Owners Answers**: No.  The Policy's plain text only imposes a duty on the insured to take reasonable steps to prevent its covered property from suffering further loss, without imposing a duty on the insurer to compensate the insured for doing so.  Regardless, courts have recognized that Sue & Labor clauses are generally designed to "compensate the insured for expenses . . . incurred to preserve the insured property from a peril insured against under the basic policy." *RK Mech., Inc. v. Travelers Prop. Cas. Co. of Am.*, 944 F. Supp. 2d 1013, 1024 (D. Colo. 2011).  Because Plaintiff cannot point to a valid Covered Cause of Loss under the Policy's other provisions, Plaintiff is not entitled to expenses incurred that relate to non-covered damages.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

IV.    The fourth issue to be decided is whether—in the event Plaintiff's individual claims are permitted to go forward—this Court should strike Plaintiff's nationwide class allegations.

**Owners Answers:** Yes.  Were this Court to certify the class proposed by Plaintiff, the Court would have to examine in detail the terms and exclusions of each policy (which differ in many instances), how each different state has interpreted the terms and exclusions of each policy (which differs in many instances), and whether the underlying facts alleged by each putative class member entitled that class member to relief (which will differ in many instances).   These "fact-driven individualized inquir[ies] into each putative class member's" insurance policy, analyzed under each state's different interpretation of that policy, "obviously run[] contrary to the class action purpose of utilizing common evidence to efficiently adjudicate disputes." *See Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 954 (N.D. Ohio 2009) (Polster, J.)

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

### INTRODUCTION

Plaintiff Bridal Expressions LLC operates a store in Mentor, Ohio that provides wedding dresses, tuxedos, and formal wear to its customers.  In light of the Ohio Director of Health's Stay Safe Order relating to the COVID-19 pandemic (the "COVID-19 Order"), Plaintiff claims that it was temporarily forced to close its doors (which Plaintiff acknowledges have since reopened, albeit in a limited capacity).  Plaintiff now attempts to represent a nationwide class in this lawsuit against its property insurer, Owners Insurance Company ("Owners"), seeking Business Income, Extra Expense, and Sue & Labor coverage under its Policy.

Plaintiff's claims fail as a matter of Ohio law, are not appropriate for class action treatment, and thus, should be dismissed for several reasons.  *First*, Plaintiff has failed to allege facts that support Business Income or Extra Expense coverage under the Policy's plain terms.  These coverage provisions require Plaintiff to show that it suffered "direct physical loss of or damage to Covered Property," and Ohio courts are clear that a showing of "direct physical loss" requires a showing of tangible, structural harm to Covered Property.  Plaintiff makes no such allegation and cannot do so in good faith.  *Second,* because Plaintiff is not entitled to Business Income or Extra Expense coverage, it is likewise not entitled to Sue & Labor coverage, which applies only to reimburse an insured for costs incurred in connection with an otherwise covered cause of loss.  *Third*, Plaintiff's claim for coverage is barred by the Policy's exclusions.  *Fourth*, Plaintiff's nationwide class action allegations should also be stricken due to the multitude of individual factual and state-by-state specific issues that make class action treatment unmanageable.

### BACKGROUND

**I.** **Plaintiff Seeks Coverage Under an Insurance Policy Based on the Existence of the COVID-19 Pandemic.**

The factual allegations in the Amended Complaint are sparse.  Plaintiff alleges that it

1

operates a store in Mentor, Ohio to "provid[e] wedding dresses, tuxedos, and other formal wear" to its customers. (Am. Compl. ¶ 1.) Plaintiff states it "was forced to suspend business due to COVID-19 as well as to [take] necessary steps to prevent further damage and minimize the suspension of business and continue operations." (*Id.* ¶ 14.) Although Plaintiff does not specifically allege why it closed its doors, public documents show that, effective March 23, 2020, the State of Ohio's "Stay at Home Order" went into effect. This Order required that "non-essential businesses and operations must cease," and that "all persons are required to stay at home or their place of residence unless they are engaged in Essential Activities, Essential Government Functions, or to operate Essential Businesses and Operations." Bridal stores were not classified as "Essential Businesses," and so Plaintiff's store was not able to remain physically open under Ohio law. Since that time, Plaintiff's business has reopened, but in a limited capacity. (*Id.* ¶ 3.)

Plaintiff (falsely) alleges that once it closed its doors, it "submitted a claim to Defendant for loss to its Covered Property caused by COVID-19," and that Owners denied the claim that same day. (Am. Compl. ¶¶ 37-38.) Based on this denial, Plaintiff filed a Complaint in this Court, joining in on the flood of COVID-19 business interruption complaints filed across the country. After Owners moved to dismiss the Complaint, Plaintiff filed an Amended Complaint, which now raises three breach of contract and three declaratory judgment claims arising out of Owners' alleged failure to provide Business Income, Extra Expense, and Sue & Labor coverage.[1] Moreover, based on Plaintiff's belief that Owners "has, on a uniform and widescale basis, refused

---

[1] Plaintiff's counsel, along with others, have moved to consolidate upwards of 100 such complaints (including this one) before the Judicial Panel for Multidistrict Litigation. Owners opposed such consolidation. (*See* **Ex. 1**, Br. in Opp. to Pet. to Transfer.) Owners further notes that in a similar action filed by Plaintiff's counsel in the Southern District of Ohio, the Defendant filed a Motion to Dismiss, along with a Motion to Certify the question of whether the presence of COVID-19 qualifies as a "direct physical loss" to the Ohio Supreme Court, both of which remain pending *See Troy Stacy Enters., Inc. v. The Cincinnati Ins. Co.*, Case No. 1:20-cv-00312-MWM (S.D. Ohio).

2

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

to pay . . . for losses sustained due to the presence of COVID-19," Plaintiff now seeks to represent "nationwide classes" under "Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4)." (Am. Compl. ¶¶ 40, 41.) These putative classes consist of "[a]ll persons and entities" who (1) purchased either Business Income, Extra Expense, or Sue & Labor coverage in a policy issued by Owners, (2) "suffered a suspension of business related to COVID-19, at the premises covered by their Owners insurance policy," and (3) made a claim for Business Income, Extra Expense, or Sue & Labor coverage, but were denied. (*Id.* ¶ 42.)

## II.  The Insurance Policy.

As indicated above, this case centers on an insurance policy (the "Policy") issued by Owners to Plaintiff "for a policy period of October 15, 2019 to October 15, 2020." (Am. Compl. ¶ 20.) The Policy's relevant provisions are as follows:

### A.  The Policy's Coverage Provisions.

For both Business Income and Extra Expense, coverage is triggered by "direct physical loss of or damage to Covered Property." The Policy states:

> **A. COVERAGE**
>
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(Policy, ECF No. 1-1, PageID #: 58.) "Covered Causes of Loss" are defined as "RISKS OF DIRECT PHYSICAL LOSS unless the loss is: **a.** Excluded in Section B., Exclusions; or **b.** Limited in Paragraph A.4, Limitations; that follow." (*Id.* at PageID #: 59.)

The "Additional Coverages" section provides, as relevant:

> **f. Business Income**
>
> We will pay for the actual loss of Business Income you sustained due to the necessary suspension of your "operations" during the "period of

3

restoration."  The suspension must be caused by direct physical loss of or damage to property at the described premises . . . caused by or resulting from any Covered Cause of Loss. . . .

**g.  Extra Expense**

We will pay necessary Extra Expense you incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises . . . caused by or resulting from a Covered Cause of Loss.

Extra Expense means expense incurred:

(1) To avoid or minimize the suspension of business and to continue "operations" . . . (2) To minimize the suspension of business if you cannot continue "operations". (3) (a) To repair or replace any property . . .

(*Id.* at PageID #: 61.)

In addition, Plaintiff notes that, "in the event of loss or damage to Covered Property," the Policy requires Plaintiff to "[t]ake all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss," and to "keep a record of [its] expenses for emergency and temporary repairs." (*Id.* at PageID #: 66-67.)  Plaintiff refers to this clause as a "Sue & Labor" coverage provision, and states that it is entitled to expenses incurred in connection with protecting the property from further damage and in keeping a record of its expenses.  (Am. Compl. ¶ 11.)

**B.  The Policy's Exclusions.**

The definition of "Covered Cause of Loss" refers to "Exclusions" which, under Ohio law, only come into play if the Court first finds that coverage exists.  As relevant to this case, the Policy contains the following Exclusions:

**1.**  We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

**a. Building Ordinance.** The enforcement of any ordinance or law: (1) Regulating the . . . use or repair of any property . . . .

4

> **c. Governmental Action.** Seizure or destruction of any property by order of governmental authority . . . .
>
> **2.** We will not pay for loss or damage caused by or resulting from any of the following: . . . .
>
> > **b. Consequential Losses:** Delay, loss of use or loss of market. . . .
>
> **3.** We will not pay for loss or damage caused by or resulting from any of the following.  But if loss or damage caused by a Covered Cause of Loss results, we will pay for that resulting loss or damage. . . .
>
> > **b. Acts or Decisions:** Acts or decisions, including the failure to act or decide, of any person, group, organization or governmental body.
>
> **4. Business Income and Extra Expense Exclusions.** We will not pay for: . . . . **b.** Any other consequential loss.

(Policy, ECF No. 1-1, PageID #: 63-65.)

## ARGUMENT

Owners now moves to dismiss Plaintiff's individual claims with prejudice under Rule 12(b)(6) or, alternatively, to strike Plaintiff's nationwide class allegations under Rule 12(f).

## I.     The Amended Complaint Fails to State a Claim Under Rule 12(b)(6).

To survive a motion to dismiss brought under Rule 12(b)(6), a complaint must allege "sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Two "working principles" underlie the Rule's pleading requirements.  *Id.*  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*  "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679. "Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."  *Id.*

When ruling on Owners' Motion, this Court may consider the insurance policy attached to

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

the Complaint, along with other documents attached to Owners' Motion to Dismiss that are referenced in and central to the Complaint. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). If the Policy's terms and the Amended Complaint's allegations are in conflict, then the Policy controls. *See Thomas v. Equifax Info. Servs., LLC*, No. 3:19-cv-286, 2020 U.S. Dist. LEXIS 73344, at \*12 (S.D. Ohio Apr. 27, 2020).

### A. Under Ohio Law, Plaintiff Is Not Entitled to Coverage Under the Policy.

When a case is before a federal court on diversity jurisdiction, the court "applies the [choice of law rules] of the state in which it sits." *Jim White Agency Co. v. Nissan Motor Corp.*, 126 F.3d 832, 835 (6th Cir. 1997). Ohio's Supreme Court has recognized that, "in insurance cases," the choice of law analysis "will often correspond with the Restatement's view that the rights created by an insurance contract should be determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy," unless "some other state has a more significant relationship . . . to the transaction and the parties." *Ohayon v. Safeco Ins. Co.*, 747 N.E.2d 206, 211 (Ohio 2001). Here, the principal location of the insured risk was in Ohio (Policy Declarations, ECF No. 1-1, PageID #: 25), and no other state has a more significant relationship to the transaction. Ohio law therefore applies.

Under Ohio law, "'[b]efore determining whether any exclusions apply, 'one who seeks to recover on an insurance policy generally has the burden of demonstrating coverage under the policy and then proving a loss.'" *Cincinnati Specialty Underwriters Ins. Co. v. Larschied*, 2014-Ohio-4137, at ¶ 13 (Ohio Ct. App. 2014) (quoting *Chicago Title Ins. Co. v. Huntington Nat'l Bank*, 719 N.E.2d 955 (Ohio 1999)). Contrary to the allegations in the Amended Complaint, the issue of whether Plaintiff can meet that burden is a question of law that this Court can decide on a Rule

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

12(b)(6) motion.[2]  *See Berrylane Trading, Inc. v. CNA Fin. Corp.*, No. 1:17-cv-2360, 2018 U.S. Dist. LEXIS 3803, at \*9 (N.D. Ohio Jan, 8, 2018) (explaining that "[u]nder Ohio law, insurance policies are contracts to be interpreted as a matter of law by the Court," and that "[i]ssues of contract interpretation are generally matters of law and therefore [are] suitable for disposition on a motion to dismiss") (citations omitted).  Because Plaintiff cannot meet that initial burden, the Court need go no further.  The Complaint should be dismissed with prejudice.

### 1. There is No Direct Physical Loss to Covered Property And Thus No Business Income or Extra Expense Coverage.

First and foremost, Plaintiff cannot meet its burden of demonstrating Business Income or Extra Expense coverage because, under each coverage provision, Plaintiff must show that it suffered "direct physical loss of or damage to property at the described premises."  (ECF No. 1-1, PageID #:58, 61.)  A widely-cited opinion from Ohio's Court of Appeals forecloses Plaintiff's allegations that it suffered such loss.

In *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130 (Ohio Ct. App. 2008) (Stewart, J.), the plaintiffs observed "the presence of mold on both interior and exterior surfaces" of their home, which "took the form of dark staining," and required them to vacate the home. *Id.* at 1134.  The insurance policy—similar to Plaintiff's here—covered "direct loss to property 'only if that loss is a physical loss to property.'" *Id.* at 1143.  Thus, the Court was faced with whether the presence of mold qualified as a direct, physical loss.  It held that it did not, because a "physical"

---

[2] For example, Plaintiff takes issue with the fact that "[i]nsurers around the country are now wanting federal and state judges to interpret the words" in the Policy, and states that the "words need no interpretation." (Am. Compl. ¶ 7.)  Plaintiff would rather have a jury decide the meaning of the contract.  (*See id.* at ¶¶ 2, 7.)  But that is not the jury's job.  *Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 830 F.3d 444, 460 (6th Cir. 2016) (criticizing use of extrinsic evidence that "the jury could have easily used to reinterpret the Agreement" because it would have "invited the jury to usurp the district court's role as the interpreter of the . . . Agreement").  Rather, "[t]he interpretation of a contract is, in the first instance, a matter of law for the court." *Seringetti Constr. Co. v. Cincinnati*, 553 N.E.2d 1371, 1375 (Ohio Ct. App. 1988).

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

injury to property under Ohio law "mean[s] a harm to the property that adversely affects the

structural integrity of the [property]." *Id.* Although the mold caused dark staining on the siding

of the home, "the staining did not rise to the level of 'physical injury' to the siding, *because it was

only temporary and did not affect the structure of the wood.*" *Id.* at 1144 (emphasis added).  The

mold could be cleaned off, and the siding had not been "structurally altered such that it would need

to be replaced." *Id.*  In short, the "presence of mold did not alter or otherwise affect the structural

integrity of the siding," and "[a]bsent any specific alteration of the siding, the [plaintiffs] failed to

show that their house suffered any direct physical injury." *Id.* at 1144-45.[3]

*Mastellone* therefore makes a few things clear: to obtain coverage under a policy requiring

"direct physical loss" under Ohio law, the damage must physically affect the structural integrity

of covered property, and it must permanently affect the structural integrity of covered property.

Temporary damage that does not affect the property's structural integrity, and that can be remedied

(by cleaning or otherwise) is not enough.  *See id.*

The factual allegations in Plaintiff's Complaint do not meet this standard.[4]  Rather than

assert specific factual allegations that its building or property suffered actual and tangible structural

---

[3] In so holding, the court also relied on a leading insurance law treatise, which states, "[t]he requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." *Id.* at 1143 (quoting 10A COUCH ON INS. § 148:46 (3d ed. 1998)).  Owners further notes that, consistent with *Mastellone*'s interpretation of a "direct physical loss," a Michigan state court recently rejected an argument similar to Plaintiff's, and held that direct physical loss or damage to property is not caused by the SARS-CoV-2 virus.  *See Gavrilides Management Company et al. vs. Mich. Ins. Co.,* Case No. 20-258-CB-C30 (Ingham County July 21, 2020) (Order and Oral Hr'g Tr. at 18-20, attached as **Ex. 2**.)

[4] Notably, other Ohio bridal shops have alleged just the opposite.  In a separate case filed in the Southern District of Ohio, a bridal shop sued the Director of the Ohio Department of Health, alleging that the Director's order requiring closure of the shop was unconstitutional, while implicitly acknowledging that Ohio bridal shops could operate safely absent state orders.  *See Hartman v. Acton*, Case No. 2:20-cv-01952-ALM (S.D. Ohio) (Compl., ECF No. 1.)  There, the

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

damage, Plaintiff's Complaint instead alleges that it has suffered a loss that is "direct" and "physical" because it is "unable to use its interior space in the manner in which it had previously used its interior space," and because the "functionality of the space for business purposes" has been "diminish[ed]." (Am. Compl. ¶¶ 4-6.) Plaintiff further alleges that if it "were to conduct business as usual, the disease and virus would show up and people would get sick. This . . . is a direct physical loss." (*Id.* ¶ 25.)

But as the Sixth Circuit recognized in *Universal Image Products v. Federal Ins. Co.*, 475 F. App'x 569 (6th Cir. 2012), a loss of use or functionality of property that is unrelated to tangible, structural harm does not trigger coverage under Ohio law. There, the court surveyed how different states have interpreted the "direct physical loss or damage" requirement, and placed Ohio squarely in the group of states that require "tangible, physical losses" rather than "economic losses." *Id.* at 573. While other states have "adopt[ed] a more expansive definition of the phrase 'direct physical loss or damage,'" which sweeps in loss that "occurs when real property becomes 'uninhabitable' or substantially 'unusable,'" all that matters here is that Ohio is not one of them. *See id.* at 574.

Put simply, Plaintiff's policy is subject to Ohio law. Ohio law requires tangible, structural damage to covered property to invoke this coverage. The Amended Complaint is devoid of any allegation that the "structural integrity" of Plaintiff's building or of the "wedding dresses, tuxedos, and other formal wear" inside Plaintiff's building have been affected due to the presence of COVID-19. And it is devoid of any allegations that the presence of COVID-19 cannot be remediated. Plaintiff's Complaint should therefore be dismissed with prejudice.

---

court denied a motion for temporary restraining order (ECF No. 7), and the State's motion to dismiss for lack of jurisdiction (ECF No. 18) is currently pending.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

2.     <u>Plaintiff Has Not Adequately Alleged a "Suspension" of Business.</u>

Next, and also dispositive, is that even if Plaintiff had adequately pleaded that its building or property was physically damaged, the Business Income and Extra Expense coverages only compensate for damages stemming from a "suspension" of "operations." (ECF No. 1-1, PageID #: 61.) "Courts interpreting the term 'necessary suspension' in an insurance policy have overwhelmingly held that the term requires a complete cessation, even if temporary, as opposed to a mere slowing down of business before coverage is triggered." *Hastings Mut. Ins. Co. v. Mengel Dairy Farms, Inc.*, No. 5:19-cv-1728, 2020 U.S. Dist. LEXIS 9007, at \*15-16, 18 (N.D. Ohio May 19, 2020) (Pearson, J.) (collecting cases and rejecting claim for coverage because the plaintiff "has not provided evidence suggesting it entirely stopped its operations"). Here, while Plaintiff makes a conclusory allegation that "[t]he presence of COVID-19 . . . caus[ed] a necessary suspension of operations during a period of restoration," it does not allege that COVID-19 caused a "complete cessation" of its business, or that it was unable to carry on in other ways. Indeed, it admits that it is now able to operate in a limited capacity, even though the virus still exists. (Am. Compl. ¶ 3.) Because Plaintiff has not alleged it suffered the damages required to invoke Business Income or Extra Expense coverage, its Complaint should be dismissed for this reason, too.

3.     <u>Because Plaintiff Is Not Entitled to Business Income or Extra Expense Coverage, It Is Likewise Not Entitled to "Sue & Labor" Coverage.</u>

Counts III and VI of the Amended Complaint seek actual damages and declaratory relief arising out of Owners' alleged denial of Sue & Labor Coverage. Notably, the text of the Policy that Plaintiff relies on in support of Sue & Labor coverage only imposes a duty on the insured to take reasonable steps to prevent its covered property from suffering further loss, without imposing a duty on the insurer to compensate the insured for doing so. (Am. Compl. ¶ 11.) But even setting that aside, courts have recognized that Sue & Labor clauses are generally designed to "compensate

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

the insured for expenses . . . incurred to preserve the insured property from a peril insured against under the basic policy." *RK Mech., Inc. v. Travelers Prop. Cas. Co. of Am.*, 944 F. Supp. 2d 1013, 1024 (D. Colo. 2011). Because this "obligation comes into being only when the action taken is to minimize or prevent a loss for which the underwriter would be liable," when the "underwriter would not be liable at all" for the coverage sought by the insured, then "there would be no contractual obligation to repay sue and labor." *Id.* at 1025 (collecting cases). In other words, "an insured's ability to recover mitigation costs under a sue and labor clause is tied to the insurer's obligations under the general insuring provisions of the policy." *Id.*; *see also, e.g.*, *Port of Seattle v. Lexington Ins. Co.*, 48 P.3d 334, 340 (Wash. Ct. App. 2002) ("The obligation exists only when the action taken is to prevent a loss for which the underwriter be liable."); *Am. Home Assur. Co. v. J.F. Shea Co.*, 445 F. Supp. 365, 367 (D.D.C. 1978) (same).

Here, because the damage alleged by Plaintiff did not result from a covered cause of loss for Business Income or Extra Expense coverage, any further expenses incurred by Plaintiff to mitigate a non-covered cause of loss do not fall to Owners to reimburse. Counts III and VI should therefore be dismissed with prejudice.

### 4. The Lack of a Virus Exclusion Has No Bearing On Whether Plaintiff is Entitled to Coverage.

Finally, although Plaintiff implies that coverage exists because Owners' policy "does not include, and is not subject to, any exclusion for losses caused by viruses or communicable diseases" (Am. Compl. ¶¶ 12-13, 22), that is not the case for two reasons.

First, the Policy's Exclusions do not come into play unless Plaintiff meets its initial burden of proving coverage. *Cincinnati Specialty*, 2014-Ohio-4137 at ¶ 13 (Ohio Ct. App. 2014) ("Before determining whether any exclusions apply, 'one who seeks to recover on an insurance policy generally has the burden of demonstrating coverage under the policy and then proving a loss.'").

11

In other words, the presence or absence of an exclusion is irrelevant to whether Plaintiff has alleged that it suffered "direct physical loss" that would entitle it to coverage in the first place.  *See generally id.*; *see specifically Ward Gen. Ins. Servs., Inc. v. Employers Fire Ins. Co*., 114 Cal. App. 4th 548, 555 (2003) (finding no direct physical loss and stating that it was therefore "unnecessary to analyze the various exclusions and their application to this case").

Second, Plaintiff's sole support for its proposition that, even in the absence of structural harm to property, the "presence of virus or disease can constitute physical damage to property" is an incomplete and inaccurate excerpt of the Insurance Service Office's ("ISO") Circular statement to state insurance regulators from 2006.  (Am. Compl. ¶ 26.)  Plaintiff's Complaint quotes only a short and out-of-context excerpt of the Circular Statement's Introduction, however.  When read in more detail, the ISO Circular plainly offered a virus exclusion because:

> **While property policies have not been a source of recovery for losses involving contamination by disease-causing agents, the specter of pandemic or hitherto unorthodox transmission of infectious material raises the concern that insurers employing such policies may face claims in which there are efforts to expand coverage and to create sources of recovery for such losses, contrary to policy intent.**
>
> In light of these concerns, we are presenting an exclusion relating to contamination by disease-causing viruses or bacteria or other disease-causing microorganisms.

(*See* **Ex. 3** (emphasis added).)[5]  In other words, the ISO Circular justified creating a virus exclusion not because viruses were previously intended to be covered, but instead out of concern that insureds may improperly try to "expand coverage . . . contrary to policy intent."  (*Id.*)  Plaintiff now attempts to do just that, and to "expand coverage" to an area that the Insurance Service Office has acknowledged would be "contrary to policy intent."  This attempt should be rejected.

---

[5] This Court may consider this document in its entirety because it is referenced in and central to the Amended Complaint. *See Bassett*, 528 F.3d at 430.

**B.** **Allowing Plaintiff to Amend Its Complaint Would be Futile Because the Policy's Exclusions Would Bar Coverage Anyway.**

Because Plaintiff has not alleged facts entitling it to coverage, that should be the end of the matter. Owners notes, however, that any attempt to amend the Complaint and allege facts entitling Plaintiff to coverage would be futile, because the Policy's exclusions would bar coverage anyway. *See, e.g.*, *State Farm Ins. Co. v. Peda*, 2005-Ohio-3405, ¶ 30 (Ohio Ct. App. 2005) ("The interpretation of a contract term, such as an exclusion clause is . . . a question of law reserved for the court.") (citation omitted) (ellipses added in *State Farm*). As shown by the lawsuit in the Southern District of Ohio, where a bridal shop sued the State to allow it to open, and as shown through the fact that Plaintiff's shop is now open after the State's restrictions have lifted, Plaintiff's business was forced to close not because of damage to its property, but rather because of State orders requiring such closure. At all times that Plaintiff's business was allegedly "suspended" from operating, Plaintiff was in fact prohibited from operating under state law. Any damages incurred are merely consequential losses arising out of the State orders and, therefore, are excluded from coverage. (*See* Exclusions, ECF No. 1-1, PageID #: 63-65 (excluding: coverage based on "[t]he enforcement of any ordinance or law . . . regulation the . . . use . . . of any property"; coverage based on the "[s]eizure or destruction of any property by order of governmental action"; coverage based on "[a]cts or decisions . . . of any person, group, organization or governmental body"; and "[a]ny other consequential loss").)

**II.** **Even If Plaintiff's Claim Survives on an Individual Basis, the Nationwide Class Allegations Should be Stricken.**

If this Court dismisses the claims brought on an individual basis, then the class allegations must be dismissed as well. *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the

defendants, none may seek relief on behalf of himself or any other member of the class."). But even if this Court allows Plaintiff's individual claims to proceed, the nationwide class claims should still be stricken under Federal Rule of Civil Procedure 12(f) and Local Rule 23.1(c).

### A.     Legal Framework.

#### 1.     Rule 23's Class Certification Standards.

"Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule." *Wal-Mart v. Dukes*, 564 U.S. 338, 351 (2011); *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 537 (2012) ("The party seeking class certification has the burden[.]").  Before finding that a plaintiff has satisfied this standard, courts must conduct a "rigorous analysis."  *Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 417 (6th Cir. 2012).  Viewed through that lens, Plaintiff "must satisfy two sets of requirements." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011).  *First*, "[t]o merit certification, a putative class must satisfy the four requirements of Rule 23(a)—numerosity, commonality, typicality, and adequate representation." *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare, Inc.*, 863 F.3d 460, 466 (6th Cir. 2017).  *Second*, the putative class must "fit within one of the three types of classes listed in Rule 23(b)."  *Id.* at 466.

#### 2.     Rule 12(f)'s Motion to Strike Standards.

Owners moves to strike Plaintiff's nationwide class allegations at the outset "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Kennedy v. Cleveland*, 797 F.2d 297, 305 (6th Cir. 1986) (describing motion to strike standards).  The Sixth Circuit, and district courts following the Sixth Circuit's lead, have made clear that when discovery cannot cure the central defect in the class claims, courts may resolve a class certification question on a defendant's motion to strike class allegations even

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

if the plaintiff has not yet moved to certify the class. *See, e.g.*, *Pilgrim*, 660 F.3d at 949; *Glazer v. Reimer Law Co.*, 2019 U.S. Dist. LEXIS 25151, at *10 (N.D. Ohio Feb. 15, 2019) (Boyko, J.) (granting Rule 12(f) motion to strike); *Progressive Health & Rehab Corp v. Quinn Med., Inc.*, 323 F.R.D. 242, 248 (S.D. Ohio 2017); *Oom v. The Michaels Cos.*, 2017 U.S. Dist. LEXIS 112113 (W.D. Mich. July 19, 2017); *World, L.L.C. v. Atlas Choice Corp.*, 2015 U.S. Dist. LEXIS 65215, at *5-7 (N.D. Ohio May 18, 2015) (Gaughan, C.J.); *Loreto v. The Procter & Gamble Co.*, 2013 U.S. Dist. LEXIS 162752 (S.D. Ohio Nov. 15, 2013).[6]

"When a party files a motion to strike class allegations, the plaintiff bears the burden of proving that Rule 23 has been satisfied." *Progressive Health*, 323 F.R.D. at 245. In assessing whether that burden has been met, the Court must determine if the complaint "contain[s] factual allegations enough to raise a right to class certification above the speculative level on the assumption that all the allegations in the complaint are true." *Oom*, 2017 U.S. Dist. LEXIS 112113, at *7 (internal citations and quotation marks omitted). That the "defendant may freely move for resolution of the class-certification question whenever it wishes does not free the district court from the duty of engaging in a 'rigorous analysis'" of whether class certification is appropriate. *Pilgrim*, 660 F.3d at 949.

**B.**     **Plaintiff's Class Definition Would Require This Court to Engage in a Claim-by-Claim Review, Examining the Terms of Each Policy, the Differing Interpretations of The Differing Terms Under Each State's Law, the Effect of the Various Governmental Orders Under Each State's Law That May Apply, and the Damages Alleged by Each Policyholder.**

A "rigorous analysis" of Plaintiff's nationwide class allegations shows that Plaintiff cannot meet—and will not be able to meet—Rule 23's requirements. Plaintiff seeks certification of a

---

[6] In making this motion to strike, Defendant does not waive its right to challenge class certification on the merits if the Complaint is not dismissed and the class allegations are not struck at the outset.

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

*nationwide* class of individuals who have purchased different insurance policies with different terms, and whose claims will be governed by different state's laws. (*See* Am. Compl. ¶ 42.)  Were this Court to certify the class proposed by Plaintiff, the Court would have to examine in detail the terms and exclusions of each policy (which differ in many instances), how each different state has interpreted the terms and exclusions of each policy (which differs in many instances), and whether the underlying facts alleged by each putative class member entitled that class member to relief (which will differ in many instances).  These "fact-driven individualized inquir[ies] into each putative class member's" insurance policy, analyzed under each state's different interpretation of that policy, "obviously run[] contrary to the class action purpose of utilizing common evidence to efficiently adjudicate disputes." *See Gawry v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 942, 954 (N.D. Ohio 2009) (Polster, J.)  Plaintiff's nationwide class allegations should be stricken.

### 1.    The Policies' Varying Terms Present Individualized Issues.

In analyzing Plaintiff's claims, this Court would first have to look to the terms of every class member's insurance policy, as Owners uses different policy forms that provide different coverages and exclusions, depending on a variety of factors including competitive needs, the regulatory jurisdiction in which it is operating, and the industry in which the insured is operating.

As just one example, Plaintiff's policy form does not include coverage for a government shutdown, nor does it include "Civil Authority" coverage.  Other policy forms issued by Owners do contain such coverage, however, calling into question whether Plaintiff would be an adequate class representative for putative class members who purchased that coverage.  Moreover, for those policies affording such coverage, each individual plaintiff will be required to show that it was operating in a jurisdiction where an order was issued requiring it to stop operating.

At the time Plaintiff filed its Complaint, at least seven states had never issued an order

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

requiring businesses to shut down.[7] And in those states that did require businesses to shut down, the orders contained different requirements that will raise numerous individual questions, such as (1) was the plaintiff deemed an "essential business" and therefore permitted to keep operating (a grocery store, a restaurant, and a bridal store are treated differently under each jurisdiction's orders), (2) even if the business was not designated as "essential," did the state or local jurisdiction permit the business to stay partially open (such as restaurants which were permitted to sell carry out food or do drive-through service), (3) what date(s) was a particular plaintiff subject to a closure order(s) and what did it do in response (some localities have refused to enforce stay-at-home and closure orders and filed lawsuits to avoid the orders), and (4) why did the plaintiff stop doing business–because the government required it to, or because, for example, the business is dependent on weddings going forward, and it suffered when customers stopped purchasing wedding dresses and gathering for weddings?  Resolution of each of these issues will be necessary before a plaintiff can attempt to pursue litigation based on a theory of governmental orders triggering coverage.

As this one example shows, the many varying terms of the many different insurance policies alone will prevent this case from being resolved "in one stroke" on a class basis.  *See Dukes*, 564 U.S. at 350 (the common issue "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke").

2.      Varying State Law Interpretations of Threshold Coverage Issues, Such as What Qualifies as a "Direct Physical Loss," Present Individualized Issues.

Even for those subgroups of policies that contain identical terms, individualized issues will still predominate.  That is because, following the adoption of the McCarran-Ferguson Act, 15

---

[7]  Iowa, Nebraska, North Dakota, South Dakota, Utah, Wyoming and Arkansas never issued stay-at-home orders.

17

U.S.C. § 1012(b), the business of insurance has been uniquely regulated at the state level. *See, e.g.*, *Uniroyal, Inc. v. Home Ins. Co.*, 707 F. Supp. 1368, 1372 (E.D.N.Y. 1988). Because each state's insurance law is different, and may lead to different coverage outcomes for different class members, certification of a nationwide class in this case would require an examination of the law of every state that Owners issues insurance policies in.

For those policies like Plaintiff's that require "direct physical loss" to obtain coverage, the putative class members would first have to show that the presence of COVID-19, by itself, can qualify as a "direct physical loss." As touched on above, some states (like Ohio) require a tangible loss to the property which causes the loss. *See e.g.*, *Universal Image Prods, Inc. v. Chubb* Corp., 703 F. Supp. 2d 705, 709 (E.D. Mich. 2010), *aff'd* 475 F. App'x 569 (6th Cir. 2012); *Florists Mut. Ins. Co. v. Ludy Greenhouse Manufacturing Corp.*, 521 F. Supp. 2d 661 (S.D. Ohio 2007) (must be a tangible loss to the property). Other states, however, interpret the requirement more broadly and include things like gas smells as causing physical damage or loss in some circumstances. *See e.g.*, *Mellin v. Northern Security Ins. Co.*, 167 N.H. 554 (2015). Still other states, such as Nebraska, Arkansas, and South Dakota, have not yet interpreted the terms, so this Court would be tasked with determining how that State's Supreme Court would rule.

3. <u>Varying State Law Interpretations of Each of the Policies' Many Exclusions Will Present a Multitude of Individualized Issues.</u>

If Plaintiff and the putative class members can jump those first hurdles and show that coverage exists, this Court would then have to examine the varying exclusions set forth in each individual policy, and the interpretations of those various exclusions under each State's laws. These, too, have been interpreted differently on a state-by-state basis. For example, states interpret the pollution exclusion differently. *Cf. Watson v. Travelers Indem. Co.*, 2005 Mich. App. LEXIS 917 (Mich. Ct. App. April 12, 2005) (claim for bodily injury resulting from inhalation of fumes

18

barred by absolute pollution exclusion); and *American States Ins. Co. v. Koloms*, 687 N.E.2d 72 (Ill. 1997) (exclusion is ambiguous). And some states consider the reasonable expectations of the insured under some circumstances when interpreting an insurance policy. *See e.g.*, *Bituminous Cas. Corp. v. Sand Livestock Sys.*, 728 N.W.2d 216 (Iowa 2007). Other states reject the doctrine completely. *See e.g*., *Wilkie v. Auto-Owners Ins. Co*., 664 N.W.2d 776 (Mich. 2003).

> 4. Varying Fact Issues Necessary to Invoke Coverage Will Require a Claim-by-Claim Review.

And if Plaintiff and the putative class members can get that far—showing that their state's law allows for coverage under their individual policy due to the mere "presence of COVID-19," and that none of the exclusions in their individual policy apply—then they would still each have to show that the presence of COVID-19 was, in fact, *on their property* to obtain coverage. This will again require individualized issues, and in all likelihood expert testimony.

## C. **These Individualized Issues Preclude Class Certification.**

When these individualized issues are present, striking class allegations at the outset is appropriate. In *Pilgrim*, for example, the Sixth Circuit affirmed the district court's striking of nationwide class allegations mainly because the court "would have to analyze each class member's claim under the law of his or her home State," and "such a task . . . would make this case unmanageable as a class action and would dwarf any common issues of fact implicated by the lawsuit." 660 F.3d at 945; *see also id.* at 947 ("[I]n view of plaintiffs' appropriate concession that the consumer-protection laws of the affected States vary in material ways, no common legal issues favor a class-action approach to resolving this dispute.").

This is a common outcome when plaintiffs seek certification of nationwide class actions in insurance coverage cases. Recognizing that policy forms vary from state to state, as do contract interpretation rules applied by the various states, courts have, on several occasions, granted

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

motions to strike class allegations that would require courts to interpret different policies that arise under different states' laws. *See, e.g.*, *Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 699 (M.D. Ga. 2012) (granting motion to strike class allegations due to variance in "the individual insurance contracts" and because the court would have to "analyze applicable statutory schemes and/or common law principles from the fifty states to determine the breach of contract claims raised in this purported nationwide class action . . . The Court's review of applicable bodies of state law on credit insurance law reveal that substantial, material differences exist"); *Am. W. Door & Trim v. Arch Speciality Ins. Co.*, 2015 U.S. Dist. LEXIS 34589, at \*24-26 (C.D. Cal. Mar. 18, 2015).

This Court should come to the same determination. To satisfy Rule 23's standards, the Supreme Court has made clear that the common issue facing the proposed class must be capable of resolution "in one stroke." *Dukes*, 564 U.S. at 350. Because this case requires "different strokes" of state law, and individualized factual issues that predominate, maintenance of a class action would be unmanageable.

## CONCLUSION

For the reasons stated above, Owners respectfully requests that this Court dismiss Plaintiff's individual claims with prejudice and enter judgment in Owners' favor or, alternatively, strike Plaintiff's nationwide class allegations.

Dated: August 4, 2020

By: /s/ *Lori McAllister*

Lori McAllister (MI Bar No. P39501)
Theodore W. Seitz (MI Bar No. P60320)
Kyle M. Asher (0098459)
DYKEMA GOSSETT PLLC
Capitol View, 201 Townsend Street, Suite 900
Lansing, Michigan 48933
(517) 374-9150

*Attorneys for Owners Insurance Co.*

20

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

I, Lori McAllister, certify that this document adheres to the page limitations set forth in Local Rule 7.1(f). Although this Court has not yet designated a track for this case, for the reasons explained in Owners' previously-filed Notice Identifying Complex Litigation, Owners believes this case should be set on the track for Complex Litigation. Regardless, Owners' Memorandum in Support of its Motion is less than 20 pages, and therefore complies with the page limitation requirements for either Standard or Complex cases.

Dated: August 4, 2020

*/s/ Lori McAllister*
Lori McAllister (MI Bar No. P39501)
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, MI 48933
lmcallister@dykema.com
(517) 374-9150

*Attorney for Owners Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 4, 2020, my assistant caused the foregoing to be electronically

with the Clerk of the Court using the electronic filing system, which will send notification of such

filing to all counsel of record at their respective addresses as disclosed on the pleadings.

*/s/ Lori McAllister*
Lori McAllister (MI Bar No. P39501)
DYKEMA GOSSETT PLLC
201 Townsend Street, Suite 900
Lansing, MI 48933
lmcallister@dykema.com
(517) 374-9150

*Attorney for Owners Insurance Company*

076799.000122  4814-6444-2308.1

DYKEMA GOSSETT PLLC • Capitol View, 201 Townsend Street, Suite 900, Lansing, Michigan 48933

22