UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRIDAL EXPRESSIONS LLC, *individually*, *and on behalf of all others similarly situated*, | ) ) ) ) | Case No.: 1:20 CV 833 |
| Plaintiff | ) ) | JUDGE SOLOMON OLIVER, JR. |
| v. | ) ) | |
| OWNERS INSURANCE COMPANY, | ) ) | |
| Defendant | ) | <u>ORDER</u> |

Currently pending before the court in the above-captioned case is Defendant Owners Insurance Company's Motion to Dismiss for Failure to State a Claim ("Motion") or Alternatively Motion to Strike Nationwide Class Action Allegations ("Motion to Strike") (ECF No. 13). For the reasons that follow, Defendant's Motion to Dismiss is granted and Defendant's Motion to Strike is denied as moot.

**I. BACKGROUND**

**A.    Facts**

Plaintiff Bridal Expressions LLC ("Plaintiff" or "Bridal Expressions") operates a bridal shop in Mentor, Ohio, and has been in business for almost twenty years. (Am. Compl. ¶ 1, ECF No. 12.) In the Amended Complaint, Bridal Expressions asserts that it "was forced to suspend its business operations due to COVID-19."[1] (*Id*. ¶ 14.) From a close review of the Amended Complaint, it

---

[1]    Plaintiff's Amended Complaint does not mention much detail surrounding its decision to suspend its business operations. For example, the Amended Complaint

appears that Bridal Expressions's claims are tied to a temporary, complete shutdown of the store and the reduced customer traffic flow in the store as a result of the social distancing measures it has employed since it reopened. (*Id.* ¶ 3.) In an effort to obtain coverage for its alleged loss of business income in connection with its decision to close its doors and thereafter reopen with social distancing measures in place as a result of the virus, Bridal Expressions submitted a claim to its insurer, Defendant Owners Insurance Company ("Defendant" or "Owners") under the Special Property Coverage (the "Policy"), which is the Policy at issue in this dispute. (*Id.* ¶¶ 8–9, 37.)

1. The Policy

This case centers on the meaning of the phrase "direct physical loss of or damage" in the context of insurance coverage for property damage. In the Policy, the coverage provision makes clear that sustaining "direct physical loss of or damage to" Covered Property[2] is a prerequisite to obtaining coverage. (Ex. 1. to Mot. at PageID #462, ECF No. 12-1.) In full, the coverage provision states:

> We will pay for **direct physical loss of or damage to** Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

(*Id.*) (emphasis added). In the Amended Complaint, Bridal Expressions asserts that it has "suffered a direct physical loss or damage because COVID-19 . . . made the property unusable in a way that it had been used before COVID-19." (Am. Compl. ¶ 2, ECF No. 12.) In describing this alleged loss, Bridal Expressions explains that "[i]nstead of being able to invite a few families and bridal parties into its salon at the same time . . . Bridal Expressions at the very most can now only serve one

---

fails to explain the timing of the shutdown, how long the business remained closed, or when the business reopened.

[2] The term Covered Property is defined in the Policy, and there is no dispute that the bridal shop falls within the Policy's definition of Covered Property.

-2-

customer at a time, with a limited number of accompanying members of the family or bridal party spaced six feet apart." (*Id*. ¶ 3.) To recover for its economic losses caused by the business changes described above, Bridal Expressions contends that it is entitled to coverage under the "Business Income," "Extra Expense," and "Sue & Labor" provisions of the Policy. (Am. Compl. ¶ 40, ECF No. 12.) In relevant part, the Business Coverage provision states:

> We will pay for the actual loss of Business Income you sustained due to the necessary suspension of your "operations" during the "**period of restoration**." The suspension must be caused by direct physical loss of or damage to property at the described premises . . . caused by or resulting from any Covered Cause of Loss.

(Ex. 1. to Mot. at PageID #465, ECF No. 12-1.) (emphasis added). In relevant part, the Extra Expense provision states:

> We will pay necessary Extra Expense you incur during the "**period of restoration**" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises . . . caused by or resulting from a Covered Cause of Loss.
>
> Extra Expense means expense incurred: (1) [t]o avoid or minimize the suspension of business and to continue "operations" . . . (2)[t]o minimize the suspension of business if you cannot continue "operations," [or] (3)(a) To repair or replace any property[.]

(*Id.*)(emphasis added). In relevant part, Section (d) of the Sue & Labor[3] provision requires insureds to:

> d. Take all reasonable steps to protect the Covered Property from further damage by a Covered Cause of Loss. If feasible, set the damaged property aside and in the best possible order for examination. Also keep a record of your expenses for emergency and temporary

---

[3]  As explained in the Amended Complaint, this provision is titled, "Duties in the Event of Loss or Damage" in the Policy but the parties refer to it as Sue & Labor Coverage. (Am. Compl. ¶ 11, ECF No. 12.)

>           repairs, for consideration in the settlement of the claim. This will not
>           increase the limit of insurance.

(*Id*. at PageID #471.)

   2. Exclusions

The Policy also includes several exclusions, four of which are possibly relevant to this case. First, the "Building Ordinance" exclusion states that Owners will not pay for any loss or damage caused by "[t]he enforcement of any ordinance or law: (1) [r]egulating the construction, use or repair of any property; or (2) [r]equiring the tearing down of any property, including the cost of removing its debris." (*Id*. at PageID #467.) Second, the "Consequential Losses" exclusion precludes coverage for any loss or damage caused by "[d]elay, loss of use or loss of market." (*Id*. at PageID #468.) Third, the "Acts or Decisions" exclusion precludes coverage for any loss or damage caused by "[a]cts or decisions, including the failure to act or decide, of any person, group, organization or governmental body." (*Id*. at PageID #469.) Fourth, the "Business Income and Extra Expense" exclusion precludes coverage for "[a]ny other consequential loss." (*Id*. at PageID #469.)

**B.      Procedural History**

On April 17, 2020, Bridal Expressions filed its Complaint in this court, asserting two breach of contract and two declaratory judgment claims on behalf of itself and all other similarly-situated Owners policyholders. (Compl., ECF No. 1-1.) In the Complaint, Bridal Expressions alleges that Owners breached the contract by denying coverage under the Business Income and Extra Expense provisions of the Policy. (*Id*. ¶¶ 38–55.) It seeks a declaratory judgment declaring that Plaintiff and the putative classes' losses are covered under the Policy and that Owners is obligated to pay for the full amount of the losses incurred by Bridal Expressions and the putative

class. (*Id*. ¶ 69.) On July 21, 2020, Bridal Expressions filed an Amended Complaint, which included an additional breach of contract claim and an additional declaratory judgment claim under the Sue & Labor provision of the Policy. (Am. Compl. ¶¶ 70–77, 92–98. )

On August 4, 2020, Owners filed the instant Motion to Dismiss, asserting that Bridal Expressions's claims fail as a matter of law because its losses were not caused by a direct physical loss of or damage to property. (ECF No. 13.) As an alternative to its Motion to Dismiss, Owners also moved to strike the class allegations in the Complaint. (ECF No. 13.) On September 1, 2020, Plaintiff filed its Response in Opposition (ECF No. 15), to which Defendant replied on September 15, 2020 (ECF No. 16). In addition, the parties also filed multiple supplemental notices of authority. (ECF Nos. 17–24.)

## II. LEGAL STANDARD

The court examines the legal sufficiency of a plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court clarified the law regarding what a plaintiff must plead in order to survive a motion made pursuant to Rule 12(b)(6) in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).When determining whether the plaintiff has stated a claim upon which relief can be granted, the court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The plaintiff's obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the Complaint are true." *Id.* A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

The Court, in *Iqbal*, further explained the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678. Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Generally, when ruling on a Rule 12(b)(6) motion, the court is limited to the allegations of the complaint. *See Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997) ("Matters outside of the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss."). Thus, when a defendant attaches matters outside of the pleadings to his 12(b)(6) motion, the court may treat the motion as one for summary judgment to be disposed of under Federal Rule of Civil Procedure 56, after providing all parties a reasonable opportunity to present all material pertinent to the motion. *Greenberg v. Life Ins. Co.*, 177 F.3d 507, 514 (6th Cir. 1999). However, a document that is attached to a defendant's 12(b)(6) motion can be considered as part of the pleadings, thereby precluding the conversion of the motion to one for summary judgment, if the document is referred to in the complaint and central to the plaintiff's claim. *Id.*; *see also Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). This exception inhibits "a plaintiff with a legally deficient claim" from "surviv[ing] a motion to dismiss simply by failing to attach a dispositive document on which it relied." *Weiner*, 108 F.3d at 89.

### III. LAW AND ANALYSIS

The parties agree that this coverage dispute centers on the proper interpretation of the phrase "direct physical loss of or damage to Covered Property." (Mem. in Supp. at PageID #562, ECF No. 13-1; Opp'n at PageID #801, ECF No. 15.) Because the Ohio Supreme Court has yet to decide what "physical loss of or damage to" property means in the context of insurance coverage, the court must "ascertain the state law from all relevant data." *Universal Image Prods., Inc. v. Fed. Ins. Co.*, 475 F. App'x 569, 572 (6th Cir. 2012). In so doing, the court analyzes the language of the policy, understanding that "[i]n the absence of ambiguity . . . the terms of the policy must simply be applied." *Bethel Vill. Condo. Assn. v. Republic-Franklin Ins. Co.*, 2007 WL 416693 at *3 (Ohio Ct. App. Feb. 8, 2007) (citing *Santana v. Auto Owners Ins. Co.*, 632 N.E.2d 1308, 1311 (Ohio Ct. App 1993)).

**A.     Interpretation of the Policy Under Ohio Law**

This case turns on whether the phrase "direct physical loss of or damage to" property is limited to tangible harm to property. On the one hand, Owners argues that under Ohio law, a physical loss of property occurs when there is "tangible, structural damage to covered property." (Mem. in Supp. at PageID #562, ECF No. 13-1.) On the other hand, Bridal Expressions maintains that "direct physical loss of or damage to" property is not limited to structural damage. (Opp'n at PageID #810, ECF No. 15.) In support of its position, Bridal Expressions argues that the presence of COVID-19 constitutes a direct physical loss of or damage to property and impairs the functionality of the property.[4] (*Id.*) For the reasons below, the court finds that the plain meaning

---

[4]      Specifically, Bridal Expressions contends that the presence of COVID-19: (1) presents a dangerous physical condition on the property, (2) rendered the property impure, (3) changed the property's substance and contaminated interior building

of the words "physical," "loss," and "damage," and relevant case law confirms that tangible harm to property is necessary to trigger coverage under the Policy.

### 1. Language of the Policy

As an initial matter, because the Policy does not define the phrase "physical loss of or damage to," the court must "look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy." *Westfield Ins. Co. v. Galatis*, 797 N.E.2d 1256, 1261 (Ohio 2003). The Ohio Supreme Court has explained that "[w]hen confronted with allegations of ambiguity, a court is to objectively and thoroughly examine the writing to attempt to ascertain its meaning." *State v. Porterfield*, 829 N.E.2d 690, 692 (Ohio 2005). However, "[o]nly when a definitive meaning proves elusive should rules for construing ambiguous language be employed. Otherwise, allegations of ambiguity become self-fulfilling." *Id*. at 692–693.

Turning to the language of the Policy, the court, as have other courts, begins its analysis by considering the definitions of the words "physical," "loss," and, "damage" in the context of the Policy as a whole. *See Fam. Tacos, LLC v. Auto Owners Ins. Co.*, No. 5:20-CV-01922, 2021 WL 615307, at *4 (N.D. Ohio Feb. 17, 2021); *Equity Plan. Corp. v. Westfield Ins. Co.*, No. 1:20-CV-01204, 2021 WL 766802, at *8 (N.D. Ohio Feb. 26, 2021). As defined by the Merriam-Webster dictionary, the word "physical" means "having material existence: perceptible especially through the senses and subject to the laws of nature." The word "Loss" is defined as: "destruction, ruin or the act of losing possession: depravation." *Merriam-Webster Online Dictionary*,

---

surfaces, (4) caused the "denial of use" of the property and the suspension of operations and (5) forced the business owners to reduce business to avoid getting people sick. (Opp'n at PageID #809–810, ECF No. 15.)

https://www.merriam-webster.com/dictionary/loss (Last visited Mar. 3, 2021). Finally, the word "damage" is defined as: "loss or harm resulting from injury to person, property, or reputation." *Merriam-Webster Online Dictionary* https://www.merriam-webster.com/dictionary/damage (last visited Mar. 3, 2021).

Applying a common sense reading of the phrase "physical loss of or damage to" property, the court finds that tangible harm to property would be necessary to invoke coverage under the Policy. Indeed, considering the dictionary definitions of the words "physical," "loss," and "damage," in the context of the phrase "direct physical loss of or damage to" property supports the court's conclusion that the Policy clearly contemplates that a material destruction of property or injury to property is necessary to trigger coverage.[5] As explained below, in reaching this determination the court finds support for its interpretation of the Policy in other cases, which examined the dictionary definitions of the policy language when interpreting similar provisions and reached the same outcome.

The weight of the case law, which the court finds well-reasoned and persuasive suggests that the dictionary definitions of the words "physical," "loss," and "damage," when read in the context of the Policy as a whole, confirms the court's conclusion that tangible harm is necessary to trigger coverage under the Policy. Indeed, several courts in this district have recently considered

---

[5] Bridal Expressions also argues that even if "'damage' somehow suggested something structural," then "'loss' must have a different meaning, or it would be rendered redundant." (*Id.* at PageID #802–803.) This distinction does not alter the outcome in this case because the property was not ruined or destroyed nor did the property sustain tangible harm (thus, there was no physical loss or damage). *See Ceres Enterprises, LLC v. Travelers Ins. Co.*, No. 1:20-CV-1925, 2021 WL 634982, at *6 (N.D. Ohio Feb. 18, 2021) (considering a similar argument and reaching the same outcome).

the phrase "direct physical loss of or damage to" property in the context of COVID-19 related insurance coverage disputes, and all but one of these courts have concluded that Ohio law requires a tangible injury to trigger insurance coverage for property damage. *Santo's Italian Cafe LLC v. Acuity Ins. Co.*, No. 1:20-CV-01192, 2020 WL 7490095, at *10 (N.D. Ohio Dec. 21, 2020) (stating that the plaintiff "must demonstrate some type of tangible physical alteration in order to claim coverage for a 'direct physical loss of or damage to' its premises"); *See Fam. Tacos, LLC*, 2021 WL 615307, at *8 (determining that "the ordinary and plain meaning of the phrase 'physical loss of or damage to' property requires a tangible, material destruction or deprivation of possession") *Ceres Enterprises,* 2021 WL 634982, at *5 (N.D. Ohio Feb. 18, 2021) (finding that the phrase 'direct physical loss of or damage to' property "intends a tangible loss of or harm to the insured property, in whole or in part"); *Brunswick Panini's, LLC v. Zurich Am. Ins. Co.*, No. 1:20-CV-1895, 2021 WL 663675, at *7 (N.D. Ohio Feb. 19, 2021) (determining that the plaintiff was not entitled to coverage under a similar policy because the plain meaning of the word 'physical,' "necessarily excludes that which is intangible or incorporeal"); *Dakota Girls, LLC, v. Phila. Indem. Ins. Co.*, No. 2:20-CV-2035, 2021 WL 858489, at *6 (S.D. Ohio Mar. 8, 2021) (examining similar policies and stating that "[f]or coverage under the [p]olicies, there must be a material or perceptible destruction, harm, or ruin to covered property"). *But see Henderson Rd. Rest. Sys., Inc. v. Zurich Am. INS. Co.*, No. 1:20-CV-1239, 2021 WL 168422, at *10 (N.D. Ohio Jan. 19, 2021) (considering a similar policy and finding that the phrase "direct physical loss of or damage to property" was ambiguous and, as such, construing the policy against the insurer).

In determining that Ohio law requires a tangible harm to property in order to invoke insurance coverage, courts have consistency relied upon the Eighth District Court of Appeals'

-10-

decision in *Mastellone v. Lightning Rod Mut. Ins. Co.*, 884 N.E.2d 1130 (Ohio Ct. App. 2008). In *Mastellone*, the court considered the phrase "physical loss to property" in the context of an insurance coverage dispute regarding the plaintiff's homeowner's insurance policy. *Id.* at 1143. There, the Court of Appeals held that mold did not constitute "physical damage" because "[t]he presence of mold did not alter or otherwise affect the structural integrity of the siding." *Id*. at 1144. In so doing, the *Mastellone* court explained that:

> The requirement that the loss be "physical," given the ordinary definition of that term, is widely held to exclude alleged losses that are intangible or incorporeal, and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.

*Id*. at 1143 (citing 10 Couch on Ins. § 148:46 (3d ed. West 1998)). Recently, several courts in this district have cited *Mastellone* for the proposition that under Ohio law, insurance coverage for property damage requires tangible harm to property. *Mikmar, Inc. v. Westfield Ins. Co.*, No. 1:20-CV-01313 2021 WL 615304, at *6 (N.D. Ohio Feb. 17, 2021); *Equity Plan. Corp.*, 2021 WL 766802, at *12; *Ceres Enterprises, LLC*, 2021 WL 634982, at *7.

In addition to examining the plain meaning of the words "physical," "loss," and "damage," courts have also evaluated the language of the "period of restoration" provision of insurance policies when determining whether the policy requires tangible harm to property. In the Policy, the "period of restoration" is defined as the period of time that:

> Begins with the date of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and [e]nds on the date when the property at the described premises **should be repaired**, **rebuilt or replaced** with reasonable speed and similar quality**.**

-11-

(Ex. 1. to Mot. at PageID #478–479, ECF No. 12-1.) (emphasis added). Applying the plain meaning of the words "repair," "rebuild," and "replace" suggests that the coverage period will not begin until there is some tangible harm to property. This result is supported by the case law interpreting similar policy language. *See Mikmar*, 2021 WL 615304, at *5 (examining similar policy language and concluding "[a] period of restoration ending with repair, rebuilding, or replacement . . . contemplates a material (physical) loss, not a loss of use with no impact on the property's structure"); *see also Equity Plan. Corp.*, 2021 WL 766802, at *10 (examining similar policy language and finding that "construing 'direct physical loss' or 'direct physical damage' to cover intangible losses, such as the economic losses that [the plaintiff] seeks to have [the defendant] cover, renders large parts of the 'period of restoration' definition nonsensical because intangible losses cannot be repaired, rebuilt, or replaced"); *Santo's Italian Café*, 2020 WL 7490095, at *10 (same).

After conducting its own analysis of the language of the Policy and relevant case law in Ohio, the court finds that equating loss of intended use of property with physical loss of the property would result in an unreasonable interpretation of the words of the Policy. *See Westfield*, 797 N.E.2d at 1262 ("Although, as a rule, a policy of insurance that is reasonably open to different interpretations will be construed most favorably for the insured, that rule will not be applied so as to provide an unreasonable interpretation of the words of the policy.") Construing the allegations in the Amended Complaint in Bridal Expressions's favor, the court finds that Bridal Expressions fails to allege plausible facts to support its claim that the presence of COVID-19 and the loss of the intended use of the property constitute a "direct physical loss of or damage to property."

### 2. Specific Types of Property Covered Under the Policy

In addition to the plain language of the Policy and case law interpreting similar language, the court finds support for its conclusion in the specific types of property mentioned in the Policy. In this case, the Policy covers: (1) the building, (2) the outdoor furniture, (3) the fire extinguishing equipment, and (4) the appliances that are used for refrigerating, cooking, dishwashing, ventilating, or laundering. (Ex. 1. to Mot. at PageID #462, ECF No. 12-1.) Reading Bridal Expressions's suggested term—"impairment of functionality"—into the Policy, would result in the Policy being triggered anytime that the rain renders the outdoor furniture unusable. Because contracts must not be interpreted in a manner which leads to an absurd result, the most logical reading of the Policy is that tangible harm to property is necessary to meet the threshold requirement for coverage. Consequently, because Plaintiff fails to plausibly allege a tangible harm to property, the court finds that it is not entitled to coverage under the Policy.

Because the court finds that Plaintiff is not entitled to coverage under the Policy, it is unnecessary to address the issue of whether coverage would be barred by one of the exclusions mentioned above.

**B.   Plaintiff's Claims**

As explained above, Bridal Expressions asserts three breach of contract claims and three declaratory judgment claims, which are all premised upon the theory that Owners improperly denied Bridal Expressions claims seeking for coverage for its COVID-19 related economic losses. Because the court has determined that the Policy does not provide coverage for Bridal Expressions's COVID-19 related economic losses, the court grants Defendant's Motion to Dismiss Plaintiff's breach of contract and declaratory judgment claims. (ECF No. 13.)

## IV. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion to Dismiss (ECF No. 13). Consequently, the court denies Defendant's Motion to Strike Class Allegations (ECF No. 13) as moot.

IT IS SO ORDERED.

                                              */s/ SOLOMON OLIVER, JR.*
                                              UNITED STATES DISTRICT JUDGE

March 23, 2021